IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDY D. SCANSEN,                                    6:12-cv-00992-MA

              Plaintiff,                     OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.


RICHARD F. MCGINTY
McGinty & Belcher, PC
P.O. Box 12806
Salem, Oregon 97309

     Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

JEFFREY R. MCCLAIN
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Randy D. Scansen, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act.  See 42 U.S.C. §§ 401-434, 1381-1383f.  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, I reverse the final decision of the Commissioner and remand for further administrative proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for SSI and DIB on March 9 and 20, 2009, respectively, alleging disability due to "[b]ack problem[s]."  Tr. 161.  His applications were denied initially and upon reconsideration.  A hearing was held before an Administrative Law Judge (ALJ) on March 22, 2011, at which plaintiff was represented by counsel and testified.  Vocational Expert (VE) C. Kay Wise was also present throughout the hearing and testified.

On April 8, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act.  After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

2 - OPINION AND ORDER

## FACTUAL BACKGROUND

Born on April 24, 1951, plaintiff was 53 years old on the alleged onset date of disability and 59 years old on the date of the hearing.   Plaintiff has a high school education and past relevant work as a storage facility manager.

Plaintiff alleges his disabilities became disabling on June 1, 2004.   In addition to the hearing testimony, plaintiff submitted an Adult Function Report, Alcohol and Drug Use Questionnaire, and a Pain and Fatigue Questionnaire.   Tr. 168-75, 176-78, 179.   Yin Kan Hwee, M.D., examined plaintiff and submitted a physical evaluation. Tr. 393-97.   In addition, Richard Alley, M.D., reviewed plaintiff's records and submitted a Physical Residual Functional Capacity Assessment.   Tr. 413-20.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.   Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).   Each step is potentially dispositive.   The claimant bears the burden of proof at Steps One through Four.   Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).   The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.   See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

3 - OPINION AND ORDER

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, June 1, 2004.  See 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*; Tr. 13.

At Step Two, the ALJ determined that plaintiff's degenerative disc disease, bilateral hip arthritis, and coronary artery disease are severe impairments.  See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 13.  The ALJ also found that plaintiff's depression, poly substance abuse in remission, hypertension, and type II diabetes are non-severe impairments.  Tr. 13-14.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 26-27.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work, and is able to carry 20 pounds occasionally and 10 pounds frequently, can sit for six out of eight hours, and stand or walk for six out of eight hours.  In addition, plaintiff is limited to frequent climbing stairs or ramps, ladders or scaffolds, balancing, stooping, kneeling, crouching, and crawling.  Plaintiff can have no exposure to workplace hazards such as unprotected heights, moving machinery, or otherwise dangerous machinery.  Tr. 14-17.

At Step Four, the ALJ found that plaintiff is capable of performing his past relevant work as a Storage Facility Attendant as it is generally performed in the national economy. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 17.

Accordingly, the ALJ did not proceed to Step Five, and found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises three issues on appeal. First, plaintiff argues that the ALJ improperly rejected his testimony. Second, plaintiff asserts that the ALJ improperly partially rejected the opinion of non-examining consultant Dr. Alley. Finally, plaintiff submits that the Step Four finding is improper because plaintiff's prior position as a "Storage Facility Manager" is different from the position in the Dictionary of Occupational Titles (DOT) the VE relied upon, "Storage Facility Attendant."

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  Martinez v. Heckler,

807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible

to more than one rational interpretation, the Commissioner's

decision must be upheld.  Andrews, 53 F.3d at 1039-40.  If the

evidence supports the Commissioner's conclusion, the Commissioner

must be affirmed; "the court may not substitute its judgment for

that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152,

1156 (9th Cir. 2001).

## DISCUSSION

### I.  Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an

ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529,

416.929.  First, the claimant must produce objective medical

evidence of an underlying impairment that could reasonably be

expected to produce the symptoms alleged.  Smolen v. Chater, 80

F.3d 1273, 1281-82 (9th Cir. 1996).  Second, absent a finding of

malingering, the ALJ can reject the claimant's testimony about the

severity of his symptoms only by offering specific, clear and

convincing reasons for doing so.  Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his

subjective symptoms is unreliable, the "ALJ must make a credibility

determination citing the reasons why the testimony is

unpersuasive."  Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999).

In doing so, the ALJ must identify what testimony is credible and

6 - OPINION AND ORDER

what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, plaintiff testified that he has problems with his back and hips that prevent him from sitting for long periods or walking any distance. Tr. 57. In addition, plaintiff stated that he has numbness in his right leg and dominant right arm that causes him to have trouble using his fingers, and has spells of dizziness throughout the day. Tr. 58. Plaintiff testified that his depression and anxiety cause him to isolate himself. Tr. 59. Plaintiff reported that he can only walk one to three blocks before needing to lie down for an hour or more. Tr. 70. Plaintiff explained that his hip problems are caused by poor blood flow, and as a result, he walks very gingerly. Tr. 72-73.

In his Adult Function Report, plaintiff reported that in a typical day he showers, eats, cleans his house and shops as needed, goes to alcohol and drug addiction treatment, prepares dinner, does laundry, and reads or watches television before bed. Tr. 168. Plaintiff reported that he cooks simple meals and does most routine house and yard work. Tr. 170. With respect to hobbies and

interests, plaintiff stated that he enjoys television, reading, and sports, but can no longer play golf because he cannot hold a club in his right hand, walk, or turn without pain. Tr. 172. Plaintiff reported that he socializes at church and in treatment programs, but that his conditions have caused him to lose some of his more physically active friends. Tr. 172-73. Plaintiff checked that his conditions affect his ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, and use his hands. Tr. 173. Finally, plaintiff indicated that he can walk up to two blocks before needing to rest for five to ten minutes. Id.

The ALJ found that plaintiff's impairments could reasonably be expected to produce the symptoms alleged, but nonetheless rejected plaintiff's testimony for the following reasons. The ALJ noted that plaintiff left the job immediately preceding his disability application for reasons unrelated to disability. Tr. 15. The ALJ also found plaintiff's testimony of physical incapacity to work inconsistent with the medical testimony and medical evidence in the record as a whole. Id. In addition, the ALJ cited plaintiff's reports of activities of daily living as inconsistent with disability beginning in June of 2004. Tr. 16. I conclude that these reasons, taken together, constitute clear and convincing reasons to reject plaintiff's testimony.

The ALJ properly cited plaintiff's non-disability related departure from his last job as a reason to reject his testimony.

8 - OPINION AND ORDER

See <u>Burton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001).
Plaintiff testified that the last job he had was "[m]anaging a
storage company" seven or eight years before the March of 2011
hearing.  Tr. 56.  Plaintiff alleged disability beginning June 1,
2004 - almost seven years before the hearing.  Tr. 156.  At the
hearing, plaintiff acknowledged that he left the job because the
business was sold and due to conflict with another person managing
the business.  Tr. 56.  Otherwise, plaintiff testified that he
would have continued working.  Tr. 57.  The ALJ reasonably cited
this non-disability-related termination of employment as a reason
for discrediting his testimony.

The ALJ also reasonably found that plaintiff's testimony of
physical incapacity to work was inconsistent with medical evidence.
As the ALJ noted, Dr. Hwee's finding of intact gross and fine motor
skills as well as grasping ability is inconsistent with the
substantial grasping and fingering limitations described in
plaintiff's testimony.  <u>Compare</u> Tr. 396 <u>with</u> Tr. 58.  On the whole,
Dr. Hwee found that "on exam there were no significant functional
limitations."  Tr. 397.  In addition, on December 21, 2004,
plaintiff reported to his treating physician that he "feels he is
ready to go back to work."  Tr. 249.  On March 20, 2006, plaintiff
noted that he was "feeling fine" on that day and had been working
in Seattle.  Tr. 307.  On October 5, 2007, plaintiff stated that he
was "feeling well for a change," and wanted to continue his current

medication regiment.   Tr. 326.   In January of 2009, plaintiff reported that his "general health [was] 'pretty good.'"   Tr. 343. Additionally, as the ALJ noted, both times plaintiff has been evaluated for heart or vascular surgery his physicians have ultimately decided on a more conservative course of treatment. Tr. 220-21, 473-76.  The ALJ reasonably cited inconsistency between plaintiff's allegations and the medical record as a reason to reject plaintiff's testimony.

The ALJ also rejected plaintiff's subjective symptom testimony because it was inconsistent with the activities he reported to medical providers.   Indeed, as the ALJ noted, in October of 2004, four months after plaintiff's alleged onset date of disability, plaintiff reported to a treating physician that he was working as a contract laborer painting houses and installing siding, and is a golfer.  Tr. 236.   In September of 2004, plaintiff reported that he was hanging gutters for work.   Tr. 234.   In March of 2006, plaintiff reported that he was working in Seattle.   Tr. 307.   In January of 2009, when asked by a counselor about his leisure activities, plaintiff responded, "play golf, play golf, play golf." Tr. 346.   The ALJ reasonably found that the activities plaintiff reported to his treatment providers were inconsistent with his hearing testimony and allegations of physical inability to work. In sum, I conclude that the ALJ cited clear and convincing reasons to reject plaintiff's symptom testimony.

## II.  Medical Testimony.

Plaintiff next argues that the ALJ inappropriately weighed the medical testimony because he failed to either incorporate or expressly reject Dr. Alley's limitation to occasional overhead lifting.  Tr. 416.  The ALJ fashioned the RFC based on examining physician Dr. Hwee's opinion, but did not discuss the effect that Dr. Alley's additional limitation to occasional overhead lifting had on the RFC.  See Tr. 14-17.  A reviewing physician's opinion is a medical opinion that the ALJ must evaluate.  See Shafer v. Astrue, 518 F.3d 1067, 1069 (9th Cir. 2008).  Here, the ALJ failed to explain why he did not include Dr. Alley's overhead lifting limitation in the RFC, or otherwise provide a rationale for partially rejecting Dr. Alley's opinion.[1]  I cannot conclude such error was harmless because it is not clear from the record what effect the overhead lifting limitation would have on the ALJ's Step Four finding.

## III.  Step Four Determination

Plaintiff next argues that the ALJ's Step Four determination was in error because his past relevant work as a "Storage Facility

---

[1] That the ALJ could have rejected Dr. Alley's additional opined limitation because it was inconsistent with that of examining physician Dr. Hwee is irrelevant.  This court is not entitled to infer whether an ALJ rejected a medical opinion or his reasons for doing so.

Manager" was not equivalent to the position of "Storage Facility Attendant" the ALJ relied upon.   This argument is without merit.

The VE noted that "Storage Facility Manager" was not listed in the DOT, but that the DOT included "Storage Facility Attendant," and found that it qualified as past relevant work.   Tr. 77, 79. The DOT describes the duties of Storage Facility Rental Clerk[2] as:

> Leases storage space to customers of rental storage facility: Informs customers of space availability, rental regulations, and rates.   Assists customers in selection of storage unit size according to articles or material to be stored.   Records terms of rental on rental agreement form and assists customer in completing form. Photographs completed form and customer to establish identification record, using security camera.   Computes rental fee and collects payment. Maintains rental status record and waiting list for storage units.   Notifies customers when rental term is about to expire or rent is overdue.   Inspects storage area periodically to ensure storage units are locked.   Observes individuals entering storage area to prevent access to or tampering with storage units by unauthorized persons.   Loads film into security and surveillance cameras, records dates of film changes, and monitors camera operations to ensure performance as required.   Cleans facility and maintains premises in orderly condition.

Dictionary of Occupational Titles 295.367-026, available at 1991 WL 672594.

In his work history report, plaintiff listed two jobs at storage facilities.   First, plaintiff reported that he worked at Safekeeping Mini Storage, where his duties were to "[r]ent units, clean up complex, bookkeeping [and] maintenance as needed."   Tr.

---

[2] It is unclear why the VE and ALJ referred to this job as "Storage Facility Attendant" whereas the DOT titles it "Storage Facility Rental Clerk."   This difference is purely nominal.

12 - OPINION AND ORDER

185.   Plaintiff reported that the heaviest weight lifted at this job was less than ten pounds, that he walked, stood, and sat for one hour each, and wrote, typed, and handled small objects for three hours each day.   Id.   Plaintiff also listed he worked at Lighthouse 101, where he performed identical duties.   Tr. 186.

At the hearing, plaintiff reported that at these jobs his duties were "[m]aintenance, changing locks on doors, repairing rollup doors," "basic property cleanup," and sharing "some of the office duties" including "[r]enting of the units" and "handling payments."   Tr. 64-65.   Plaintiff testified that his office duties were primarily "coverage" when another employee was out of the office, and that he primarily performed maintenance and cleanup work.   Tr. 65.   Plaintiff stated that at this job he typically lifted 20 to 25 pounds and spent half the day on his feet.   Id.

While the DOT's job description is more detailed than plaintiff's description, it is consistent with the job plaintiff reported performing.   The ALJ reasonably relied on the VE's testimony that plaintiff could perform his past relevant work as a "Storage Facility Attendant," and did not err at Step Four in this respect.   Because I conclude that the ALJ did not err at Step Four, I do not address plaintiff's Step Five argument.

IV.   **Remand**

After finding the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of

benefits.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

The issue turns on the utility of further proceedings.  A remand

for an award of benefits is appropriate where there is no useful

purpose to be served by further proceedings or where the record is

fully developed.

The Ninth Circuit has established a three-part test "for

determining when evidence should be credited and an immediate award

of benefits directed."  Id.  The court should grant an immediate

award of benefits when:

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are no
> outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required to
> find the claimant disabled were such evidence credited.

Id.  Where it is not clear that the ALJ would be required to award

benefits were the improperly rejected evidence credited, the court

has discretion whether to credit the evidence.  Connett v.

Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Even if Dr. Alley's occasional overhead lifting limitation was

included in the RFC, it is not clear how the disability

determination would be affected.  Specifically, it is unclear

whether plaintiff could still perform past relevant work as a

Storage Facility Rental Clerk or could perform other work that

exists in significant numbers in the national economy.  Thus,

because there are outstanding issues that must be resolved before

14 - OPINION AND ORDER

a disability determination can be made, and because it is not clear from the record that the ALJ will be required to find plaintiff disabled were such evidence credited, I remand to the Commissioner for further proceedings consistent with this opinion. See Harman, 211 F.3d at 1178.

On remand, the ALJ should either explicitly explain his rejection of Dr. Alley's overhead lifting limitation or incorporate it into the RFC and accordingly revisit Step Four and, if necessary, Step Five. The ALJ need not hold a new hearing or receive new evidence. If the ALJ incorporates Dr. Alley's limitation of plaintiff to occasional overhead lifting, however, additional VE testimony will be necessary.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _15_ day of July, 2013.

Malcolm F. Marsh
United States District Judge

15 - OPINION AND ORDER